# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | James H. Alesia | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 0763 | **DATE** | May 14, 2002 |
| **CASE TITLE** | *Benevolence International Foundation v. John Ashcroft, et al.* | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Although the defendants requested a stay, they did not file a formal motion to stay. Therefore, on the court's own motion, the court stays this case in its entirety until the conclusion of the parallel criminal case, *United States v. Benevolence Int'l Found., et al.*, No. 02 CR 414 (N.D. Ill., filed Apr. 29, 2002).

(11) ■ For further detail see order attached to the original minute order.

| | No notices required, advised in open court. | | | **Document Number** | |
|---|---|---|---|---|---|
| | No notices required. | | number of notices | | |
| ✓ | Notices mailed by judge's staff. | | | | |
| | Notified counsel by telephone. | | date docketed | 33 | |
| | Docketing to mail notices. | | | | |
| | Mail AO 450 form. | | docketing deputy initials | | |
| | Copy to judge/magistrate judge. | | 5/14/02 | | |
| CW | courtroom deputy's initials | | date mailed notice | | |
| | | Date/time received in central Clerk's Office | CW mailing deputy initials | | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

DOCKETED
MAY 15 2002

| | |
|---|---|
| BENEVOLENCE INTERNATIONAL FOUNDATION, INC., <br><br> Plaintiff, <br><br> v. <br><br> JOHN ASHCROFT, in his official capacity as Attorney General of the United States of America; PAUL H. O'NEILL, in his official capacity as Secretary of the Treasury of the United States of America; COLIN L. POWELL, in his official capacity as Secretary of State of the United States of America; ROBERT S. MUELLER, III, in his official capacity as Director, Federal Bureau of Investigation; and R. RICHARD NEWCOMB, in his official capacity as Director, United States Department of Treasury, Office of Foreign Assets Control, <br><br> Defendants. | Case No. 02 C 0763 <br><br> Judge James H. Alesia |

## MEMORANDUM OPINION AND ORDER

For the following reasons, the court stays this case in its entirety until the conclusion of the parallel criminal case, *United States v. Benevolence Int'l Found., et al.*, No. 02 CR 414 (N.D. Ill., filed Apr. 29, 2002).

### I. BACKGROUND

Plaintiff Benevolence International Foundation ("BIF") claims that it is a nonprofit, religious, humanitarian, charitable organization funded by donations from individuals, businesses, and other Islamic organizations and dedicated to assisting individuals afflicted by

war, natural disaster, and extreme poverty. According to BIF, since 1992, it has administered essential humanitarian aid to the poor in needy areas of the world, by distributing food, clothing, and medical services in places such as Afghanistan, Bosnia, China, and Pakistan, and by operating hospitals, medical and dental clinics, and orphanages in places such as Tajikistan, Azerbaijan, Daghestan, and Ingushetia. According to BIF, it is an Illinois corporation with offices in Illinois and New Jersey and approximately ten offices overseas. BIF claims that, in October 2001, it retained counsel because it became aware of a story published in the New York Times on October 1, 2001, which indicated that BIF was targeted for investigation as a potential source of funding for terrorism.

In response to the attacks on September 11, 2001, President George W. Bush issued Executive Order 13224, declaring a national emergency with respect to the "grave acts of terrorism and threats of terrorism committed by foreign terrorists, including the terrorist attacks in New York, Pennsylvania, and the Pentagon committed on September 11, 2001, ... and the continuing and immediate threat of further attacks on United States nationals or the United States ...." Exec. Order No. 13224, 66 Fed. Reg. 49,079, 49,079 (Sept. 23, 2001). Acting under the International Emergency Economic Powers Act ("IEEPA"), 50 U.S.C. §§ 1701-06, the President blocked the property of individuals and organizations he designated as terrorists or supporters of terrorism and authorized the Secretaries of State and the Treasury to identify additional entities or individuals as terrorists or supporters of terrorism whose property should be blocked. *See* 66 Fed. Reg. 49,079, 49,079. On October 26, 2001, Congress passed the Uniting and Strengthening America by Providing Appropriate Tools Required to Intercept and Obstruct

Terrorism Act of 2001 ("USA PATRIOT Act"), Pub. L. No. 107-56, 115 Stat. 272 (2001), which amended IEEPA.

On December 14, 2001, the Department of Treasury's Office of Foreign Assets Control ("OFAC") issued BIF a notice stating that the United States Government had reason to believe that BIF may be engaged in activities that violate IEEPA. The letter notified BIF that the United States Department of the Treasury was blocking all BIF's funds, accounts and business records pending further investigation, pursuant to IEEPA. The notice required immediate production and surrender of all BIF's records, including personal computers, pursuant to IEEPA. Also on December 14, 2001, the FBI searched the Chicago offices of BIF and the home of BIF's Chief Executive Officer, Enaam Arnaout ("Arnaout"), seizing from both places items such as financial records, office equipment, and personal property. According to defendants, this search was conducted pursuant to the emergency search provisions of the Foreign Intelligence Surveillance Act ("FISA"), 50 U.S.C. §§ 1801 *et seq.*, and subsequently approved by a federal court through the issuance of a search warrant.

On January 30, 2002, BIF filed this lawsuit, challenging the constitutionality of the FBI's searches and the OFAC blocking order. Nearly three months later, on March 26, 2002, BIF filed a motion for preliminary injunction, which it corrected on April 5, 2002. In its motion, BIF seeks an injunction requiring the defendants to return the property seized from BIF's offices and Arnaout's home, and to unblock BIF's funds. BIF filed numerous declarations in support of its motion for preliminary injunction, including a sworn affidavit by Arnaout stating that "BIF has never provided aid or support to people or organizations known to be engaged in violence,

terrorist activities, or military operations of any nature." (Ex. A to Pl.'s Corr. Mot. Prelim. Inj. at ¶ 7.) On April 11, 2002, BIF filed a motion for leave to proceed with discovery and for immediate production of the administrative record. BIF attached to that motion discovery requests for documents, including "[a]ny and all documents that form the basis for defendants' suspicion that BIF may be engaged in activities that violate the [IEEPA] ...." and "[a]ny and all documents relating to what, if any, minimization procedures defendants proposed and/or implemented pursuant to [FISA]...." (Pl's Mot. for Disc. & Immed. Produc. of Admin. R. at 4-5.) On April 29, 2002, BIF also opposed the introduction of classified evidence in camera and ex parte.

On April 29, 2002, the United States Attorney for this District filed criminal charges against BIF and Arnaout for having "knowingly submitted false material declarations under oath" in this civil proceeding. *United States v. Benevolence Int'l Found., et al.*, No. 02 CR 414 (N.D. Ill., filed Apr. 29, 2002). The criminal charges are based on Arnaout's sworn affidavit supporting BIF's motion for preliminary injunction in this case, in which Arnaout states that "BIF has never provided aid or support to people or organizations known to be engaged in violence, terrorist activities, or military operations of any nature." (Ex. A to Pl.'s Corr. Mot. Prelim. Inj. at ¶ 7.) In FBI Special Agent Robert Walker's 35-page affidavit filed with the criminal complaint, the United States alleges that "BIF was in fact engaged in the support of various persons and groups involved in military and terrorist type activity." (Walker Aff. ¶ 4.) The 35-page affidavit provides background information for BIF and Arnaout, and describes in detail their ties with certain terrorists, their dealings with the Chechen *mujahideen*, and their efforts to frustrate international investigations and obstruct justice.

On April 30, 2002, the day after the criminal charges were filed against BIF, the defendants filed their memorandum in opposition to BIF's motion for leave to proceed with discovery and for immediate production of the administrative record in this case. In their memorandum, the defendants suggested that this court should stay civil discovery as a result of the criminal complaint against BIF and Arnaout. (Defs.' Mem. in Opp'n to Pl.'s Mot. at 13, n.13.) Two days later, at a hearing on May 2, 2002 this court ordered the parties to file memoranda of law addressing whether the court should stay this case pending the conclusion of the parallel criminal case. In defendants' memorandum in response to the court's order, defendants requested that this court "either stay the case in its entirety, or at the very least, deny or stay all discovery in the case and permit this case to continue with procedural safeguards designed to guarantee the integrity of the parallel criminal matter." (Defs.' Mem. at 1.) BIF now concedes to a stay of discovery but opposes a stay of this case in its entirety while the criminal case is pending. (Pl.'s Mem. at 6.)

## II. DISCUSSION

The Constitution does not require a stay of civil proceedings pending the outcome of criminal proceedings. *Admiral Ins. Co. v. Fed. Sec., Inc.*, No. 94 C 5649, 1997 WL 695727, at *2 (N.D. Ill. Nov. 4, 1997) (citing *SEC v. Dresser Indus., Inc.*, 628 F.2d 1368, 1375 (D.C. Cir. 1980)). However, a court may use its discretion to determine whether to stay civil proceedings when the interests of justice require such action. *United States v. Kordel*, 397 U.S. 1, 12 n.27 (1970); *Admiral Ins. Co.*, 1997 WL 695727 at *2; *Bruner Corp. v. Balogh*, 819 F. Supp. 811, 814 (E.D. Wis. 1993) (citing *United States v. 6250 Ledge Rd.*, 943 F.2d 721, 729 n.9 (7th Cir. 1991)). Such a stay contemplates "special circumstances" and the need to avoid substantial and irreparable prejudice. *6250 Ledge Rd.*, 943 F.2d at 729; *Bruner Corp.*, 819 F. Supp. at 815.

"Federal courts have deferred civil proceedings pending the completion of parallel criminal prosecutions when the interests of justice seemed to require such action ...." *Kordel*, 397 U.S. at 12 n.27 (citing cases). *See, e.g., United States v. Michelle's Lounge*, No. 91 C 5783, 1992 WL 194652, at *5 (N.D. Ill. Aug. 6, 1992) ("Conducting civil discovery while the related criminal investigation is continuing would compromise that investigation."); *Marino v. Hegarty*, No. 86 C 6759, 1987 WL 9582, at *1 (N.D. Ill. Apr. 10, 1987) ("It would be inappropriate to proceed with this [civil] case during the ongoing criminal investigation.").

In deciding whether to stay civil proceedings where a similar criminal action is brought before the completion of the civil proceedings, a court may consider a variety of factors, such as: (a) the interest of the plaintiff in proceeding expeditiously with the litigation or any particular aspect of it, and the potential prejudice to the plaintiff of a delay; (b) the burden which any particular aspect of the proceedings may impose on the defendant; (c) the convenience of the court in the management of its cases, and the efficient use of judicial resources; (d) the interests of persons not parties to the civil litigation; and (e) the interest of the public in pending civil and criminal litigation. *Admiral Ins. Co.*, 1997 WL 695727, at *2; *Nowaczyk v. Matingas*, 146 F.R.D. 169, 174 (N.D. Ill. 1993). In effect, the court must balance the civil plaintiff's right to prepare his case promptly against the public interest in withholding full disclosure sought by the civil plaintiff. *Campbell v. Eastland*, 307 F.2d 478, 490 (5th Cir. 1962).

In a case with a similar procedural posture, the Fifth Circuit found that the interests of justice required the stay of civil proceedings pending the completion of a parallel criminal prosecution. *Campbell v. Eastland*, 307 F.2d 478 (5th Cir. 1962). In *Campbell*, the plaintiffs

6

instituted a civil action for a tax refund several months after they were put on notice that Special Agents from the IRS had begun investigating their alleged income tax evasion. *Campbell*, 307 F.2d at 481. The plaintiffs filed a motion for discovery, seeking production of documents, such as IRS reports, not otherwise obtainable in the imminent criminal suit against them for tax fraud. *Id.* at 482. The government requested a stay of the civil proceedings pending disposition of the criminal case, but the trial judge denied the government's request. *Id.* at 483. In so ruling, the trial court adopted a strict view that there was nothing in 18 U.S.C. § 3500, the statute relating to the production of documents in criminal cases, that exempts the operation of Rule 34 in a civil case by virtue of the fact that there might be a criminal case pending or a potential criminal case. *Id.* The trial judge reasoned that the civil suit for tax refund was a bona fide suit, and such, it was completely independent of the criminal case for tax fraud. *Id.* When the United States Attorney on the case declined to obey the trial judge's discovery order, the trial judge entered judgment in favor of the plaintiffs as a sanction, without hearing any evidence in support of the complaint. *Id.* at 484-85.

The Fifth Circuit reversed and remanded for a full trial on the merits, finding that the United States Attorney made a good faith refusal in declining to obey the trial court's discovery order. *Campbell*, 307 F.2d at 492. The Fifth Circuit reasoned that whether or not the suit was bona fide, the effect of granting the motion to give pre-trial discovery of documents inaccessible to the taxpayer in the criminal case nullified the effect of the applicable criminal discovery rules, and the plaintiffs' "good faith on a suit for refund does not sanctify the motion for discovery." *Id.* at 488. Rather,

> [i]n handling motions for a stay of a civil suit until the disposition of a criminal prosecution on related matters and in ruling on motions under the civil discovery procedures, a judge should be sensitive to the difference in the rules of discovery in civil and criminal cases. While the Federal Rules of Civil Procedure have provided a well-stocked battery of discovery procedures, the rules governing criminal discovery are far more restrictive. Separate policies and objectives support these different rules.

*Id.* at 487 (citations omitted). In denying the government's request for a stay of the civil case pending the disposition of the parallel criminal case, the trial court had offered "an open invitation to [the parties] under criminal investigation to subvert the civil rules into a device for obtaining pre-trial discovery against the Government in criminal proceedings." *Id.* at 488. The Fifth Circuit stated, "[t]his civil action for a tax refund is tied in a tight knot with a criminal prosecution for fraud.... Here, the trial judge attempted to cut away the criminal strand. We think that it would have been better to have waited and then patiently untangled the knot." *Id.* at 480.

The Supreme Court and the Seventh Circuit, as well as courts in the Northern District of Illinois, have cited *Campbell* positively for the rule that a trial court should not permit a defendant in a criminal case to use liberal civil discovery procedures to gather evidence to which he might not be entitled under the more restrictive criminal rules. *See, e.g., Degen v. United States*, 517 U.S. 820, 825 (1996) (citing *Campbell* in finding that a court can exercise its discretion to manage civil litigation to avoid interference with a criminal case); *In re Film Recovery Sys., Inc.*, 804 F.2d 386, 389 (7th Cir. 1986) (citing *Campbell* when stating that a trial court should take caution "where a criminal litigant initiates a civil suit in order that he might circumvent the limitations on discovery imposed in criminal proceedings."); *Wilk v. Am. Med. Ass'n*, 635 F.2d 1295, 1300 (7th Cir. 1980) (citing *Campbell* for the proposition that "[a]

collateral litigant should not be permitted to exploit another's discovery in the sense of instituting the collateral litigation simply as a device to obtain access to the sealed information."); *Nowaczyk*, 146 F.R.D. at 178 ("'[T]he trial judge in the civil proceeding should not ignore the effect discovery would have on a criminal proceeding that is pending ....'") (quoting *Campbell*, 307 F.3d at 487); *United States v. Phillips*, 580 F. Supp. 517, 518-19 (N.D. Ill. 1984) (citing *Campbell* when stating that "[j]udicial discretion and procedural flexibility should be utilized to harmonize the conflicting rules and to prevent the rules and policies applicable to one suit from doing violence to those pertaining to the other."). Here, as in *Campbell*, the interests of justice require the stay of these civil proceedings pending the completion of the parallel criminal prosecution.

In weighing the competing interests in the case at bar, the court acknowledges that BIF has an interest in proceeding expeditiously with its litigation. The stay of this case may potentially prejudice BIF because BIF's funds likely will remain blocked under the OFAC notice, the charities allegedly receiving support from BIF may suffer without BIF's donations, BIF's assets may dissipate while it is unable to raise funds, and the BIF corporation itself may dissolve for lack of incoming funds. Nonetheless, all the remaining factors involved in this case favor a stay and outweigh both the prejudice to BIF and BIF's interest in expeditious litigation.

First, the burden which the discovery aspect of the civil proceedings may impose on the government favors a stay. A criminal defendant is entitled to very limited discovery. *Degen*, 517 U.S. at 825 (citing FED. R. CRIM. P. 16(a)(2), 26.2). In a civil case, by contrast, a party is entitled to broad discovery of any information sought if it appears "reasonably calculated to lead

to the discovery of admissible evidence." *Id.* (quoting FED. R. CIV. P. 26(b)(1)). Because the parallel civil and criminal cases involve many of the same parties, issues, relevant facts, and transactions, the discovery involved in the continued litigation of the civil matter could interfere with the criminal proceeding. Like the civil plaintiff in *Campbell*, BIF was aware that it was the subject of federal investigation before it initiated its civil lawsuit. Also, like *Campbell*, BIF's document requests, such as its requests for "[a]ny and all documents that form the basis for defendants' suspicion that BIF may be engaged in activities that violate the [IEEPA] ...." and "[a]ny and all documents relating to what, if any, minimization procedures defendants proposed and/or implemented pursuant to [FISA]...." (Pl's Mot. at 4-5.), seek evidence to which BIF is likely not entitled in the parallel criminal case. As in *Campbell*, allowing BIF to obtain civil discovery in this case would circumscribe the restrictive rules of criminal discovery. Proceeding with this case would compromise the ongoing federal investigation of BIF and Arnaout. Therefore, this factor favors a stay of the civil proceedings.

Second, the convenience of the court in the management of its cases, and the efficient use of judicial resources favors a stay. The civil proceedings are just beginning, and no discovery has taken place. Also, the continuance of the civil trial would not provide the government with an unfair advantage because the government already has extensive access to BIF's documents. *See Admiral Ins. Co.*, 1997 WL 695727, at *2 (weighing these factors). Most importantly, a stay of the civil case will allow an opportunity for the criminal case to resolve the critical issue of whether BIF's motion for preliminary injunction in this case is supported by a perjured affidavit, namely Arnaout's sworn statement that BIF has no connection to terrorism. *See Lineback v.*

10

*Printpack, Inc.*, 979 F. Supp. 831, 850 (S.D. Ind. 1997) ("In this case the delay will give the ... opportunity to decide in the first instance the most critical question ...."). The question of BIF's and Arnaout's alleged connections with terrorism constitutes the dominant issue both in BIF's civil suit and in the criminal charges against BIF and Arnaout. Moreover, the success of BIF's civil suit depends in large part on the truth or falsity of Arnaout's sworn and allegedly perjured affidavit, which currently comprises the sole basis for the criminal charges against BIF and Arnaout. Clearly, the resolution of the related criminal matter will resolve many issues in this civil case. A stay of this case will circumvent duplicative efforts by the two judges in the parallel civil and criminal cases. At the same time, the stay will prevent potentially contradictory decisions regarding nearly identical issues of law and fact in the parallel proceedings. Therefore, this factor favors a stay of the civil proceedings.

Finally, the interests of persons not parties to the civil litigation and the interest of the public in pending civil and criminal litigation favors a stay. As stated in *Campbell*, "[a]dministrative policy gives priority to the public interest in law enforcement. This seems so necessary and wise that a trial judge should give substantial weight to it in balancing the policy against the right of a civil litigant to a reasonably prompt determination of his civil claims and liabilities." *Campbell*, 307 F.2d at 487. Especially in this case involving BIF's alleged support of international terrorism and matters of national security, the public interest in law enforcement outweighs BIF's right to a reasonably prompt determination of its civil claims. Therefore, this factor favors a stay of the civil proceedings.

In sum, the special circumstances of this case, including the similarity of parties, issues, relevant facts, and transactions, the size and importance of the pending criminal case, and the need to avoid substantial and irreparable prejudice to the government and the public, favor a stay of the civil proceedings in this case. Therefore, in the interest of justice, this court exercises its discretion to stay this civil case in its entirety until the conclusion of the parallel criminal case, *United States v. Benevolence Int'l Found., et al.*, No. 02 CR 414 (N.D. Ill., filed Apr. 29, 2002).

### III. CONCLUSION

For the foregoing reasons, the court stays this case in its entirety until the conclusion of the parallel criminal case, *United States v. Benevolence Int'l Found., et al.*, No. 02 CR 414 (N.D. Ill., filed Apr. 29, 2002).

Date: **MAY 14 2002**

Judge James H. Alesia
United States District Court